**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| CLEAR BLUE SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>05 PETETE, INC. d/b/a EUPHORIA VIVE LA DIFERENCIA a/k/a EUPHORIA,<br><br>Defendant. | Case No.: |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Clear Blue Specialty Insurance Company ("Clear Blue"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against 05 Petete, Inc., d/b/a Euphoria Vive La Diferencia a/k/a Euphoria ("Petete"), alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for declaratory judgment to resolve an actual and justiciable controversy between the parties regarding their respective rights and obligations under a liability insurance policy that Clear Blue issued to Petete. In particular, Clear Blue seeks a declaration that it owes no duty to defend or indemnify Petete under the subject policy with respect to the claims asserted in a civil action styled, *Claudia Sampedro v. Petete, Inc., et al.*, No. 2:25-cv-04263, which is pending in the United States District Court for the Eastern District of Pennsylvania (the "Underlying Lawsuit").

## THE PARTIES AND CITIZENSHIP

2.     Clear Blue is an insurance company organized and existing under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Clear Blue is authorized to transact the business of insurance in the Commonwealth of Pennsylvania and elsewhere.

3.      Petete is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal address in Philadelphia, Pennsylvania. Therefore, Petete is a citizen of the State of Pennsylvania.

## JURISDICTION AND VENUE

4.      This action is brought, in part, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.      This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      In actions for declaratory relief brought under diversity jurisdiction, the amount in controversy is measured by the value of the object of the litigation, including the pecuniary impact an adverse declaration would have on any party to the lawsuit.

7.      If Clear Blue does not prevail, it may be required to defend and potentially indemnify Petete in the Underlying Lawsuit for alleged damages, including substantial claimed economic losses, reputational harm, emotional distress, and punitive damages in an amount exceeding $75,000.

8.      This Court may properly exercise general personal jurisdiction over Petete because it is a corporation organized under the laws of the Commonwealth of Pennsylvania and maintains its principal place of business in Philadelphia, Pennsylvania.

9.      Petete also has sufficient minimum contacts with Pennsylvania because it has purposefully directed activities toward Pennsylvania and this judicial district, including the conduct alleged in the Underlying Lawsuit pending in the Eastern District of Pennsylvania. The

2

claims asserted herein arise directly from those contacts, and the exercise of personal jurisdiction over Petete comports with due process.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Petete resides in this District, the Underlying Lawsuit is pending in this District, and a substantial part of the events or omissions giving rise to the coverage dispute occurred in Philadelphia, Pennsylvania.

## THE UNDERLYING LAWSUIT

11.     On or about July 29, 2025, Claudia Sampedro, Janet Guzman, Stephanie Rao, and Jessica Hinton (the "Underlying Plaintiffs") filed the Underlying Lawsuit in the United States District Court for the Eastern District of Pennsylvania.

12.     On or about December 2, 2025, the Underlying Plaintiffs filed the operative Amended Complaint against Petete, Euphoria One, Inc., and Adams & Tabor Real Estate LP ("Adams & Tabor"). A true and correct copy of the operative Amended Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit 1.

13.     The Underlying Lawsuit arises out of an alleged course of conduct involving the intentional and reckless publication and dissemination of the Underlying Plaintiffs' images to promote themed events at a nightclub known as Euphoria, located in Philadelphia, Pennsylvania.

14.     The Underlying Plaintiffs contend that Petete engaged in false and misleading conduct by using their images, likenesses, and identities in advertising and promotional materials to create the impression that they were affiliated with, endorsed, or participated in events at the club. The Underlying Plaintiffs further allege that Petete exercised unauthorized control over those interests and retained profits and other benefits derived from such use, resulting in damage to their economic interests and professional reputations.

15.    According to the underlying Amended Complaint, Petete owns and operates Euphoria and its associated social media platforms.

16.    The Underlying Plaintiffs allege that Petete promoted Euphoria through its Instagram and Facebook accounts, which were used to advertise the club and promote events.

17.    The Underlying Plaintiffs, who are described as professional models, allege that they customarily license the use of their images, likenesses, and identities for commercial or promotional purposes only with express authorization and in exchange for agreed-upon compensation, and that their income depends on the controlled licensing of those rights and the maintenance of their professional reputations to secure future work.

18.    The Underlying Plaintiffs allege that Petete used their images without consent, authorization, or compensation, thereby depriving them of control over their likenesses and invading their privacy rights.

19.    Between February 2018 and June 2021, Petete allegedly used its social media platforms to publish and disseminate the Underlying Plaintiffs' images without consent on approximately eighteen occasions, many of which involved identical or substantially similar reposts promoting the same or similar events at the nightclub.

20.    The Underlying Plaintiffs therefore allege that Petete commercially exploited their images, likenesses, and identities for advertising and promotional purposes and wrongfully retained profits and other benefits derived from such use, allegedly causing damage to their economic interests and professional reputations.

21.    The Underlying Plaintiffs further allege that Petete failed to implement and enforce adequate policies governing the use of intellectual property and publicity rights in its advertising and promotional activities. They contend that Petete owed a duty to avoid deceptive or misleading

4

advertising and marketing materials and breached that duty through the negligent hiring, training, and supervision of employees responsible for marketing and social media content.

22.     The exhibits attached to the underlying Amended Complaint identify specific images and corresponding dates of publication associated with the club's social media accounts, listed below:

| Plaintiff | Exhibit | Published Date |
|---|---|---|
| Claudia Sampedro | A | June 18, 2018<br>July 4, 2018<br>July 10, 2018<br>July 18, 2018<br>July 24, 2018<br>July 25, 2018<br>July 31, 2018 |
| Janet Guzman | B | June 3, 2021<br>June 11, 2021 |
| Stephanie Rao | C | June 3, 2021<br>June 11, 2021 |
| Jessica Hinton | D | February 11, 2018<br>October 21, 2020<br>October 24, 2020<br>October 31, 2020<br>November 7, 2020<br>November 14, 2020<br>April 3, 2021 |

23.     The Underlying Plaintiffs also assert trademark-based claims arising from the alleged use of their images and likenesses.

24.     In connection with those claims, the Underlying Plaintiffs added Adams & Tabor as a defendant in the Underlying Lawsuit, identifying it as the landlord and/or owner of the club premises.

25.     The Underlying Plaintiffs allege that Adams & Tabor knew or had reason to know of the alleged misuse of their trademarks and facilitated the infringement by continuing to lease

the premises despite that knowledge, and therefore assert that Adams & Tabor is contributorily liable for the alleged trademark infringements of Petete.

26.     Based on these allegations, the Underlying Plaintiffs assert the following causes of action:

| | |
|---|---|
| Count I | Violation of § 43(a)(1)(A) of the Lanham Act (False Association) (Petete and Euphoria) |
| Count II | Violation of § 43(a)(1)(B) of the Lanham Act (False Advertising) (Petete and Euphoria) |
| Count III | Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) – Contributory Trademark Infringement (Adams & Tabor) |
| Count IV | Right of Privacy (Petete and Euphoria) |
| Count V | Common Law Right of Publicity (Petete and Euphoria) |
| Count VI | Defamation (Petete and Euphoria) |
| Count VII | Negligence and Respondeat Superior (Petete and Euphoria) |
| Count VIII | Conversion (Petete and Euphoria) |
| Count IX | Unjust Enrichment (Petete and Euphoria) |
| Count X | Quantum Meruit (Petete and Euphoria) |

27.     By way of relief, the Underlying Plaintiffs seek damages available under the Lanham Act, as well as compensatory, consequential, and punitive damages, and such other relief as the court deems just and proper.

## **THE CLEAR BLUE POLICY**

28.     Clear Blue issued policy number AE04-00001537-00 to Petete for the policy period January 16, 2021 to January 16, 2022 (the "Policy"). A true and correct copy of the Clear Blue Policy is attached hereto as Exhibit 2.

29.     The Policy includes coverage, in relevant part, for Commercial General Liability ("CGL"). The CGL Coverage Part contains a Limit of Insurance of $1 million each "occurrence"[1] and $2 million in the aggregate.

30.     The Policy provides the following, in relevant part:

---

[1] Terms in quotation marks are defined in the Clear Blue Policy.

6

**SECTION I – COVERAGES**

\*      \*      \*

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

\*      \*      \*

   b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\*      \*      \*

2. **Exclusions**

   This insurance does not apply to:

\*      \*      \*

   c.  **Material Published Prior to Policy Period**

   "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

\*      \*      \*

   i.  **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

   "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

   However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

7

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;
b.  Malicious prosecution;
c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;
f.  The use of another's advertising idea in your "advertisement"; or
g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

**EXCLUSION – LIBEL, SLANDER, DISPARAGEMENT, PRIVACY VIOLATION AND ADVERTISING INJURY ARISING OUT OF EXHIBITIONS AND RELATED MARKETING**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  **Exclusions**

    A.  The following exclusion is added to paragraph **2. Exclusions of Section I – Coverage – B Personal and Advertising Injury Liability:**

    This insurance does not apply to:

    **Personal and Advertising Injury Parts d, e, f and g Arising Out Of Exhibitions and Related Marketing**

    The following parts of "personal and advertising injury":

8

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement";

if such activities arise out of or are part of "exhibitions and related marketing."

**B.** The **Infringement Of Copyright, Patent, Trademark Or Trade Secret** exclusion under paragraph **2. Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability** is deleted in its entirety and replaced by the following:

**Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However;

**(1)** Under the exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement"; and

**(2)** This exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

But, Exceptions **(1)** and **(2)** above do not apply to "personal and advertising injury" arising out of "exhibitions and related marketing."

## 2. Definitions

The following definition is added to **Section V - Definitions:**

"Exhibitions and related marketing" means:

**(a)** The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work, in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.

**(b)** The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.

**(c)** Merchandising, advertising or publicity programs or material for the operations and material described in **(a)** or **(b)** above.

*     *     *

**CLEAR BLUE'S PRELIMINARY CLAIMS HANDLING**

31. Clear Blue received notice of the Underlying Lawsuit on or about January 22, 2026.

32. On or about March 16, 2026, Clear Blue, through its authorized claims administrator, Raphael & Associates ("R&A"), sent a letter to Petete acknowledging receipt of the Underlying Lawsuit and agreeing to provide a defense to Petete subject to a full and complete reservation of rights.

33. The March 16, 2026 letter advised that significant coverage issues exist, including whether certain exclusions may preclude or limit coverage for the claims asserted in the Underlying Lawsuit.

34. Clear Blue expressly reserved all rights under the Policy and applicable law, including the right to seek a judicial determination of its defense and indemnity obligations.

35. An actual, present, and justiciable controversy has arisen and now exists between the parties regarding their respective rights, duties, and obligations under the Policy, including whether Clear Blue has any defense or indemnity obligation thereunder based on the facts at issue.

**COUNT I – DECLARATORY RELIEF**<br>**(The "Exhibitions and Related Marketing Exclusion" Applies to Bar Coverage)**

36. Clear Blue restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

37. Under the insuring agreement of Coverage B of the CGL Coverage Form, Clear Blue agrees to pay those sums that the insured becomes legally obligated to pay as damages

10

because of "personal and advertising injury" caused by an offense arising out of Petete's business committed in the "coverage territory" during the policy period.

38.     The allegations in the Underlying Lawsuit fall within offense (e) of the Policy's definition of "personal and advertising injury," defined as "oral or written publication, in any manner, of material that violates a person's right of privacy," because the Underlying Plaintiffs allege that Petete posted their images on social media, thereby publishing material to third parties and the public at large, to promote nightclub events and create the false impression that they endorsed or were affiliated with the nightclub, which allegedly violates their rights of privacy and publicity.

39.     The Policy contains an endorsement titled "Exclusion – Libel, Slander, Disparagement, Privacy Violation And Advertising Injury Arising Out Of Exhibitions And Related Marketing" (the "ERM Exclusion").

40.     Section A. of the ERM Exclusion eliminates coverage for "personal and advertising injury" offenses (d) through (g), including privacy violations, "if such activities arise out of or are part of 'exhibitions and related marketing.'"

41.     Subsection (a) of the definition of "exhibitions and related marketing" includes "the creation, production, publication, performance, exhibition, distribution or exploitation of . . . celebrity image or likeness . . . in any medium including . . . social media."

42.     The allegations in the Underlying Lawsuit arise out of "exhibitions and related marketing" because the Underlying Plaintiffs allege that Petete created, published, and distributed social media posts featuring their images and likenesses to promote nightclub events, market the club, and attract patrons through internet and social media channels.

11

43. The Underlying Plaintiffs further allege that Petete posted curated images of them—individuals who are professional models with substantial social media followings, commercial value, and recognizable public personas—on platforms such as Instagram and Facebook to create the appearance that they were associated with or endorsed the nightclub and its events, thereby making their likenesses a central component of Petete's advertising and publicity strategy.

44. In addition, subsection (c) of the "exhibitions and related marketing" definition includes merchandising, advertising, or publicity programs or materials for promotional events involving the exploitation of celebrity image or likeness in social media.

45. The allegations in the Underlying Lawsuit thus fall within the subject matter and media expressly contemplated by the ERM Exclusion, namely, the use of celebrity image or likeness in connection with promotional events through social media.

46. Accordingly, the ERM Exclusion applies to bar coverage for the claims asserted against Petete in the Underlying Lawsuit.

## COUNT II – DECLARATORY RELIEF
### (The IP Exclusion Applies to Bar Coverage)

47. Clear Blue restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

48. Section B. of the ERM Exclusion contains an intellectual property ("IP") Exclusion (the "IP Exclusion"), which replaces Exclusion i. and eliminates coverage for "personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

49. In the Underlying Lawsuit, the Underlying Plaintiffs allege that Petete infringed their trademark rights by using Plaintiffs' images and likenesses in advertisements without consent.

50. The IP Exclusion applies where the underlying claims arise out of or are causally connected to alleged intellectual property violations.

51. Because the alleged injuries arise out of trademark infringement, the claims asserted in the Underlying Lawsuit fall within the scope of the IP Exclusion.

52. Although the IP Exclusion contains limited exceptions applicable to offenses (f) and (g) listed in the Policy's definition of "personal and advertising injury," those exceptions are not implicated by the allegations in the Underlying Lawsuit and, in any event, do not apply to "personal and advertising injury" arising out of "exhibitions and related marketing."

53. Accordingly, the allegations in the Underlying Lawsuit fall within the scope of the IP Exclusion.

54. As a result, the IP Exclusion applies to bar coverage for the claims asserted against Petete in the Underlying Lawsuit.

## COUNT III – DECLARATORY RELIEF
### (The "Prior Publication" Exclusion Applies to Bar Coverage)

55. Clear Blue restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

56. Exclusion c. (the "Prior Publication Exclusion") provides that the insurance under Coverage B does not apply to "personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

13

57.     The Prior Publication Exclusion bars coverage for an insured's continuous or repeated publication of substantially the same offending material first published before the policy period, while not barring coverage for publications during the policy period that differ in substance from those published before the inception of coverage.

58.     Based on the exhibits attached to the underlying Amended Complaint, the dates on which certain of the allegedly infringing images were first posted to social media predate the inception of the Policy.

59.     In particular, Exhibit D to the underlying Amended Complaint reflects that the first publication of Jessica Hinton's image occurred on February 11, 2018, followed by six additional publications before the inception of the Policy on January 16, 2021.

60.     It is further alleged that one image of Jessica Hinton was subsequently published during the policy period, but it is substantially the same as the earlier publications.

61.     Accordingly, the Prior Publication Exclusion applies to bar coverage for any damages Petete may be legally obligated to pay with respect to the claims asserted by Jessica Hinton.

## COUNT IV – DECLARATORY RELIEF
### (No Coverage for Punitive or Exemplary Damages)

62.     Clear Blue restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

63.     The Underlying Plaintiffs seek recovery of punitive damages in addition to various other forms of relief.

64.     Pursuant to the endorsement titled "Punitive or Exemplary Damages Exclusion," the insurance under the Clear Blue Policy does not apply, in relevant part, to any punitive damages,

14

exemplary damages or the multiplied portion of any award because of any "personal and advertising injury."

65.    To the extent that any punitive, exemplary, or treble damages are awarded in the Underlying Lawsuit, this exclusion applies to preclude coverage for all damages which Petete may be legally obligated to pay.

**COUNT V – DECLARATORY RELIEF**
**(No Duty to Indemnify)**

66.    Clear Blue restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

67.    The duty to defend subsumes the duty to indemnify.

68.    If there is no duty to defend, then there is no duty to indemnify as a matter of law.

69.    Therefore, to the extent that Clear Blue owes no duty to defend, there likewise is no potential duty to indemnify.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Clear Blue Specialty Insurance Company, respectfully requests that this Court enter judgment in its favor, and against Defendant 05 Petete, Inc., as follows:

(a)    Declaring that Clear Blue owes no duty to defend or indemnify Petete under the Policy with respect to the claims asserted in the Underlying Lawsuit; and

(b)    Granting Clear Blue any other and further such relief as this Court deems just and appropriate.

**JURY DEMAND**

Clear Blue hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated:  March 23, 2026

Respectfully submitted,


/s/ Michael J. Smith
Michael J. Smith
STEWART SMITH
300 Four Falls Corporate Center, Suite 670
West Conshohocken, PA 19428
Ph: (484) 344-5320
msmith@stewartsmithlaw.com

Jordon S. Steinway*
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
Ph: (312) 762-3169
jsteinway@batescarey.com
*Pro Hac Vice Admission forthcoming

Counsel for Clear Blue Specialty Insurance
Company

16