IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLEAR BLUE SPECIALTY INSURANCE COMPANY | : | CIVIL ACTION |
| v. | : | |
| 05 PETETE, INC. d/b/a EUPHORIA VIVE LA DIFERENCIA a/k/a EUPHORIA | : | NO. 26-1891 |

MEMORANDUM

Bartle, J. July 29, 2026

Plaintiff Clear Blue Specialty Insurance Company ("Clear Blue") seeks a declaration that it has no obligation to provide insurance coverage and thus no duty to defend or indemnify its insured, 05 Petete, Inc. ("Euphoria"), which is a defendant in an underlying action pending in this court captioned Sampedro v. Euphoria One, Inc., Civil Action No. 25-4263. The court has now before it Clear Blue's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

I

The standard for evaluating a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is the same as the standard used for evaluating a motion to dismiss under Rule 12(b)(6). Zurich Am. Ins. Co. v. FTS USA, LLC, 325 F. Supp. 3d 618, 623 (E.D. Pa. 2018) (citing Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004)). The

court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988) (quoting Soc'y Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)). "In order to grant a motion for judgment on the pleadings, it must be apparent that there are no issues of material fact and that only questions of law exist." Corrigan v. Methodist Hosp., 158 F.R.D. 70, 71 (E.D. Pa. 1994). The movant must clearly establish that no material issue of fact remains and therefore, that he or she is entitled to judgment as a matter of law. Jablonski, 863 F.2d at 290. The court may also consider documents integral to or explicitly relied upon in the pleadings. Mele v. Fed. Rsrv. Bank of N.Y., 359 F.3d 251, 256 n.5 (3d Cir. 2004). The court may also take judicial notice of matters of public record. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

II

The interpretation of an insurance policy under Pennsylvania law is generally a question of law for the court rather than the jury. 401 Fourth St., Inc. v. Invs. Ins. Grp., 879 A.2d 166, 171 (Pa. 2005). The court's "primary goal in interpreting a policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's

terms." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006). In ascertaining the parties' intent, Pennsylvania courts will not consider merely individual terms but will read the entire insurance policy as a whole. Riccio v. Am. Republic Ins. Co., 705 A.2d 422, 426 (Pa. 1997).

When the language of the policy is clear and unambiguous, the court must give effect to that language. 401 Fourth St., 879 A.2d at 171; see also Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co., 864 F. Supp. 2d 301, 312 (E.D. Pa. 2012). Pennsylvania courts should read a policy to avoid ambiguities and give effect to all of its provisions. See 401 Fourth St., 879 A.2d at 171; Burton v. Republic Ins. Co., 845 A.2d 889, 893 (Pa. Super. Ct. 2004). However, ambiguous policy language is construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer. Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983); Mohn v. Am. Cas. Co. of Reading, 326 A.2d 346, 351 (Pa. 1974); Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975, 978, 982 (Pa. 2001). As the Supreme Court of Pennsylvania has stated, "contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." 401 Fourth St., 879 A.2d at 171 (citation modified); see also J.C. Penney

Life Ins. Co. v. Pilosi, 393 F.3d 356, 363 (3d Cir. 2004). Additionally, insurance policy exclusions must be construed narrowly against the drafter and in favor of coverage. See Mut. Benefit Ins. Co. v. Politsopoulos, 115 A.3d 844, 852 n.6 (Pa. 2015); Spece v. Erie Ins. Grp., 850 A.2d 679, 682 (Pa. Super. Ct. 2004).

In coverage disputes like this one, the insured bears the burden of proving that the loss falls within the scope of the policy. See McEwing v. Lititz Mut. Ins. Co., 77 A.3d 639, 646 (Pa. Super. Ct. 2013). However, the burden of proof is on Clear Blue, the insurer, to establish the applicability of a policy exclusion. Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

III

Under Pennsylvania law, an insurer's duty to defend its insured depends solely on whether the factual allegations in the underlying complaint, taken as true, are encompassed within the coverage provided in the policy. See Kvaerner, 908 A.2d at 896-97. The court must construe the policy and read what is contained within the four corners of the pleading to determine whether the coverage and thus the duty to defend is triggered. See Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 517 (3d Cir. 2012). The labels placed on the causes of action are not determinative. Id.

According to the underlying complaint, the plaintiffs are "well-known professional models" whose images were used without permission in commercial advertising by Euphoria to promote its nightclub in Northeast Philadelphia. Plaintiffs characterize the nightclub to be "in the business of selling alcohol and food in a sexually charged atmosphere." See Am. Compl. ¶ 40, Sampedro v. Euphoria One, Inc., Civil Action No. 25-4263 (E.D. Pa. Dec. 2, 2025). The underlying complaint avers Euphoria advertised using the images of the plaintiffs "to create the false impression with potential clientele that each Plaintiff either worked at the Night Club, endorsed the Night Club, or was otherwise associated or affiliated with the Night Club." See id. at ¶ 44. Plaintiffs allege the following claims against Euphoria[1]: (1) false association in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) false advertising in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (3) right of privacy; (4) common law right of publicity; (5) defamation; (6) negligence and respondeat superior; (7) conversion; (8) unjust enrichment; and (9) quantum meruit.

[1] In the underlying complaint, plaintiffs also sue Adams & Tabor Real Estate LP. It is alleged to be the landlord and owner of the property where Euphoria is located. Adams & Tabor Real Estate LP is not a party to this lawsuit.

The insurance policy in issue provides coverage for "personal and advertising injury" caused by Euphoria. It defines the term to include: "e. Oral or written publication, in any manner, of material that violates a person's right of privacy." There is no dispute that plaintiffs in the underlying action allege a personal and advertising injury, that is invasions of their rights to privacy. Nor is there any dispute that as a threshold matter, the policy provides such coverage. Clear Blue, however, relies on two exclusions in the policy to defeat coverage and the duty to defend and indemnify.

The policy excludes and does not apply to the following parts of "personal and advertising injury":

> e. Oral or written publication, in any manner, of material that violates a person's right of privacy . . . if such activities arise out of or are part of "exhibitions and related marketing".

The policy defines "Exhibitions and Related Marketing" to mean:

> (a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, <u>promotional events</u>, <u>celebrity image or likeness</u>, literary works and similar productions or work, in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or

> media, books, magazines, social media, webcasts and web sites. ...
>
> (c) Merchandising, advertising or publicity programs or material for the operations and material described in (a) . . . .

Clear Blue maintains that this exclusion applies based on its view that plaintiffs in the underlying action allege that Euphoria used their images to advertise promotional events and celebrity images at the nightclub.

The policy does not define either "promotional events" or "celebrity." Under such circumstances, the Pennsylvania Supreme Court has opined that "words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense." Kvaerner, 908 A.2d at 897. The courts "may consult the dictionary definition of a word to determine its ordinary usage." Id.

In the underlying complaint, the plaintiffs describe themselves as "well-known professional models" with social media followings. Only one plaintiff, Jessica Hinton, also identifies herself as a "social media celebrity." The description of the other three plaintiffs, however, is not synonymous with celebrity status. The dictionary definition of celebrity is "a celebrated or widely known person: one popularly honored for some signal achievement." Webster's Third New International Dictionary 359 (Philip Babcock Gove et al. eds., 1986). Being well-known in one's profession or endeavors does not by itself

raise one's status to the level of a celebrity. The allegations as to plaintiffs Claudia Sampedro, Janet Guzman, and Stephanie Rao in the underlying complaint, on which the court must rely, do not by themselves satisfy the definition of a celebrity. The celebrity exclusion does not eliminate coverage for Euphoria in the underlying action except for the claims of Hinton.

The court turns to the exclusion for advertising related to "promotional events." Each of the advertisements in issue features the image of one of the plaintiffs in the underlying action without her name or her permission.[2]

One advertisement references "Contrabando's High-Voltage Wednesdays." It lists the price of certain bottles of alcohol and then states: "This promotional price is valid only on nights when no separately scheduled special event is taking place." The social media posts featuring this advertisement also state: "Specials never before seen are available at Euphoria" and "Tonight is Wednesday night with super specials."

The second advertisement promotes "Exclusive Fridays" with "Music and entertainment by DJ Sekie." It advertises "Bottle Specials."

The third advertisement is for "Matinee Sundays" with "Music by DJ Prieto." Euphoria's social media post adds: "With

[2] The advertisements were all in Spanish. The parties have provided the court with an English translation.

@djprieto01 leading the way today, come enjoy the matinee and our specials." It includes "12-year-old bottles - $85" and "two 18-year-old bottles for $300 until 11:00 p.m."

The final advertisement speaks of "Euphoric Saturdays" and "Euphoric Saturdays, tonight featuring @djsekie and @djstarlin." Euphoria posted each of these advertisements to their social media accounts on multiple occasions. For example, the final advertisement was posted to Euphoria's social media account during multiple weeks in October and November 2020 and once in April 2021.

The advertisements attached to the underlying complaint are certainly promoting Euphoria's nightclub itself and are using the images of plaintiffs to do so. This conclusion is explicitly supported by one advertisement which states that the promotional price is valid only if "no separately scheduled special event is taking place." The advertisements, which were posted to Euphoria's social media during multiple weeks, are merely encouraging the presence of patrons on Wednesdays, Fridays, Saturdays and Sundays generally and are not pointing to any Wednesday, Friday, Saturday or Sunday in particular. It is the standard business of a nightclub to sell liquor to its clientele and to provide musical entertainment. The offer of reduced prices from time to time is a standard business practice to entice customers. The reduced

prices are not tied to a specific event or events but are in place for all Wednesdays, Fridays, Saturdays, and Sundays.

The dictionary includes in the definition of event a "noteworthy occurrence or happening" and "an unusual or significant development." Webster's Third New International Dictionary 788 (Philip Babcock Gove et al. eds., 1986). An event often connotes in common understanding something of a short, discrete or limited duration. While the World Series is an event, the baseball season is not an event. Likewise, while the grand opening of Euphoria's nightclub or the opening of any business would be an event, its continual and regular day-to-day operation is not in ordinary parlance deemed to be an event or series of events. Such operation may continue for years.

The language "promotional events," which is not defined in the policy, is at the least reasonably susceptible of different constructions. What are noteworthy happenings or unusual or significant developments to one person may not be to another person, particularly where the happenings or developments are regular and continuous over an extended period of time. Reasonable individuals can properly interpret what is being advertised by Euphoria as simply the promotion of the nightclub and inducements for the patronage of its standard day-to-day business and not "promotional events." The policy language drafted by Clear Blue is ambiguous and must be

construed against it. See Standard Venetian Blind Co., 469 A.2d at 566; Mohn, 326 A.2d at 351; Steely, 785 A.2d at 978, 982. Clear Blue has not met its burden to establish otherwise. See Madison Constr. Co., 735 A.2d at 106. The "promotional events" exclusion in the policy does not preclude coverage for Euphoria.[3]

Without benefit of any exclusions, Clear Blue has a duty to defend Euphoria at least with respect to the claims of three plaintiffs in the underlying action for invasion of their rights to privacy. Pursuant to Pennsylvania law, however, Clear Blue has a duty to undertake the defense of the entire suit against Euphoria as long as at least one claim is potentially covered by the policy. See Post, 691 F.3d at 517-18.

The motion of Clear Blue for judgment on the pleadings will be denied. It has a duty to defend Euphoria on all claims against it in the underlying action. Whether it has a duty to indemnify must await the outcome of the underlying lawsuit.

---

[3] Defendants cite two non-binding decisions, one from the Middle District of Florida and one from the District of Connecticut. Sampedro v. Clear Blue Specialty Ins. Co., No. 8:25-CV-00012-JLB-TGW, 2026 WL 1291919 (M.D. Fla. May 12, 2026); Nobriga v. Clear Blue Specialty Ins. Co., No. 3:24-cv-1980 (SVN), 2026 WL 1998727 (D. Conn. July 10, 2026). Both cases involve the same exclusions as are found in the policy before the court. In each case, professional models claimed in the underlying action that their images had been misappropriated by an entity insured by Clear Blue. These federal courts held that the exclusions for promotional events precluded coverage for the entities. This court finds neither case persuasive, even assuming that the content of the advertisements there were similar to those presented here.